UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

STACY L. BOYD,

        Plaintiff,

v.

COEUR D'ALENE SCHOOL DISTRICT #271; ERIK DAVIS, an individual; and TRENT DERRICK, an individual,

        Defendants.

Case No. 2:26-cv-00115-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

This case was originally filed in Idaho State Court in January 2026 but has since been removed to Federal District Court. Dkt. 1-1. Before the Court is Defendants' Motion to Dismiss (Dkt. 1-4) and Supporting Memorandum (Dkt. 1-5). Plaintiff Stacy L. Boyd has filed a Response to the Motion to Dismiss (Dkt. 9), to which Defendants replied (Dkt. 11).

Upon review, and for the reasons set forth below, the court GRANTS the Defendants' motion and dismisses Boyd's Complaint.[1] The Court will, however, grant Boyd an opportunity to amend his Complaint should he so choose.

## II. BACKGROUND

Boyd's Complaint asserts two causes of action: that (1) the Coeur D'Alene School District racially discriminated against him when investigating accusations of sexual misconduct and in declining to waive a conflict-of-interest policy which prevented him

---

[1] The Court finds the facts and legal arguments are adequately presented and will decide the Motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

MEMORANDUM DECISION AND ORDER - 1

from hiring his son as an assistant basketball coach, and (2) that Erik Davis and Trent Derrick defamed Boyd in their individual capacities while conducting the previously-mentioned investigation. *See generally* Dkt. 1-2.

In the Summer of 2024, the School District hired Boyd, who is Black, to be the head coach of the girls' varsity basketball team at Coeur d'Alene High School. One week after being hired, Davis and Derrick, who are employed by the School District, informed Boyd that an individual (known by Davis and Derrick to be a female police officer) contacted the School District and reported that she was the victim of sexual misconduct by Boyd when she was a minor, more than twenty years earlier.

The School District initiated an investigation which Davis and Derrick conducted. As part of the investigation, Davis and Derrick interviewed individuals familiar with Boyd to obtain information regarding the allegations. The investigation was closed after Davis and Derrick could not substantiate the allegation. During the course of the investigation, Boyd's pay was unaffected, but the School District prohibited him from coaching the girls' summer games. He returned to his coaching duties immediately after the investigation ended.

Boyd now claims that the investigation itself, the manner in which it was conducted, and the temporary prohibition from coaching were all driven by racial bias. He also claims that Davis and Derrick defamed him by publishing false information to third parties about him throughout the investigation. He asserts this caused him emotional distress, humiliation, sleeplessness, and anxiety.

Separately, upon returning to his coaching duties, Boyd wanted to hire an assistant

MEMORANDUM DECISION AND ORDER - 2

coach for the girls' basketball team. It is unclear whether Boyd can choose his coaching staff—with some parameters set by the School District—or if the School District is in charge of the hiring—but considers recommendations made by Boyd. Regardless, two applicants for the position emerged: (1) Boyd's son, who had five-years of coaching experience at the time; and (2) Maysun Wellsandt, a white female college basketball player with no coaching experience. Both were interviewed and evaluated by the School District based upon a standard rubric. Boyd's son received higher marks on the rubric and received an offer for the position. It is unclear whether Boyd or the School District extended the offer, but the offer was ultimately revoked by the School District. In revoking the offer, the School District cited a conflict-of-interest policy which prohibits a School District employee from directly supervising a family member.

Boyd asserts that choosing who to hire is a material privilege of his contract with the School District. He further alleges the School District has waived this conflict-of-interest policy for its white employees in the past, and that its decision not to do so in this instance is based on Boyd's race.

Boyd filed suit, petitioning the Court to award him declaratory relief, injunctive relief, and damages. Defendants subsequently filed a Motion to Dismiss and supporting memorandums. Defendants contend that: (1) Boyd does not have standing for either cause of action; (2) Boyd has not sufficiently pleaded his causes of action under Federal Rules of Civil Procedure 12(b)(6); and (3) Boyd failed to comply with the Idaho Torts Claim Act in regard to the defamation allegation. Boyd opposed the motion, arguing he has established standing and because his "allegations must be taken as true at the pleading stage, the

MEMORANDUM DECISION AND ORDER - 3

Motion to Dismiss must be denied." Dkt. 9, at 2. He does not claim to have complied with the Idaho Torts Claim Act regarding the defamation allegation.

### III. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). To state a claim for relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations;" however, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court identified two "working principles" that underlie *Twombly.* First, although a court must accept as true all factual allegations in a complaint when ruling on a motion to dismiss, the court need not accept unreasonable inferences or legal conclusions as true. *Id.* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. Second, only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id.* at 679.

Considering *Twombly* and *Iqbal*, the Ninth Circuit has summarized the governing

MEMORANDUM DECISION AND ORDER - 4

standard as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), or where the allegations on their face show that relief is barred for a legal reason. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

In cases decided after *Iqbal* and *Twombly*, the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

### IV. ANALYSIS

#### A. Discrimination Claims

Title VII makes it unlawful for an employer to discriminate against, or adversely affect, any individual with respect to his compensation, terms, conditions, or privileges of employment on the basis of his race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1)-(2). Likewise, the same anti-discrimination principles extend to the making and enforcement of contracts: "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts," which includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b).

When a plaintiff alleges that either of these statutory rights have been violated, he

MEMORANDUM DECISION AND ORDER - 5

"must initially plead . . . that, but for race, [he] would not have suffered the loss of [this] legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020) (requiring the but-for causation standard in § 1981 claims); *See also Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020) (requiring the but-for causation standard in Title VII claims). "[P]roof of intentional discrimination" is required to succeed on Title VII and section 1981 claims. *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985), *amended,* 784 F.2d 1407 (9th Cir. 1986).

The Idaho Human Rights Act (IHRA) operates the same way as the previously-mentioned federal statutes, likewise forbidding such discrimination. *Mackay v. Four Rivers Packing Co.*, 179 P.3d 1064, 1069 (Idaho 2008) ("The purpose of the IHRA is to provide for execution within the state of the policies embodied in the federal Civil Rights Act of 1964, as amended. . . ."); *See also Hatheway v. Bd. of Regents of Univ. of Idaho*, 310 P.3d 315, 322 (Idaho 2013) ("Federal law guides [the Idaho Supreme Court's] interpretation of the IHRA.").

The Court will now apply these standards to Boyd's two theories under his discrimination claim: that the investigation against him was racially motivated, and that the decision to enforce the conflict-of-interest policy was racially motivated. As a threshold matter, however, Defendants claim Boyd lacks standing under either theory. Thus, the Court first addresses standing and then whether Boyd's allegations rise to the level of a plausible cause of action.

*1. The Investigation*

a. <u>Standing</u>

To establish Article III standing, a plaintiff must "demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the [defendant's] actions, and that the injury can be redressed by a favorable decision." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992). The Idaho requirements for standing mirror the federal standard. *See Reclaim Idaho v. Denney*, 497 P.3d 160, 172–73 (Idaho 2021).

Boyd has provisionally[2] established standing to pursue his claims arising out of the investigation.

First, racial discrimination generally inflicts inherent injuries on those subjected to such treatment. *See Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984) ("[D]iscrimination itself . . . can cause serious non-economic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group."). Boyd has alleged he experienced differential treatment in the initiation of the investigation and the investigative process itself, including subjection to burdens and intrusions he asserts would not have been imposed on individuals outside of his protected class.

---

[2] As explained below, the Court finds Boyd has not alleged sufficient facts to proceed. Thus, in an academic sense, he has not established any of the required elements for standing either. Also, Defendants' point is well-taken that Boyd has not pointed to a *specific* injury or outlined and *specific* redressability. But that lack of specificity *could* be solved in an amended complaint—which the Court is allowing. Thus, the Court has undertaken a simple analysis and assumes, for today's purposes, that Boyd has standing. Should Boyd choose to amend his Complaint, the Court will take a more targeted look at the allegations to ensure all elements of standing have been met.

Second, Boyd's perceived injury is traceable to the School District because it was the School District and its employees that initiated and conducted the investigation.

Third, redress can be achieved through compensatory damages, injunctive relief, and declaratory relief.

Hence, Boyd has established standing in regard to his claims arising from the investigation.

b. Plausibility

Although he has standing to bring this claim, Boyd has not pleaded sufficient facts in his Complaint to meet the plausibility standard required by *Twombly/Iqbal* and must be dismissed pursuant to Rule 12(b)(6) of the Rules of Federal Civil Procedure.

Generally speaking, "[a]n investigation by an employer, without disciplinary action, does not constitute an adverse employment action." *Higdon v. Mabus*, 5 F. Supp. 3d 1199, 1212 (S.D. Cal. 2014). However, it remains unsettled under what circumstances involuntary placement on involuntary paid leave constitutes an adverse employment action. *See, e.g., Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013) (en banc) (holding that at least for First Amendment retaliation claims, being placed on involuntary leave can itself, in some circumstances, constitute an adverse employment action.). The line here is especially blurry because Idaho school districts bear a statutory and common law duty to protect the morals and health of their students. I.C. § 33–512(4); *See also Sherer v. Pocatello Sch. Dist. No. 25*, 148 P.3d 1232, 1236 (Idaho 2006); *Rife v. Long,* 908 P.2d 143, 148 (Idaho 1995). These duties extend to extra-curricular activities. *Bauer v. Minidoka Sch. Dist. No. 331,* 778 P.2d 336, 340 (Idaho 1989).

It is pure speculation to assert the investigation was racially motivated and overly intrusive because the School District inquired into Boyd's personal history by contacting individuals who know him. Boyd's Complaint fails to allege any facts which might show that, but-for his race, the investigation would not have been initiated or that, but-for his race, it would have been less intrusive. Asserting the investigation was discriminatory without explaining how it was discriminatory is nothing more than a restatement of the statutes' elements. Even though Boyd insists his Complaint meets the plausibility standard "[b]ecause [his] allegations must be taken as true at the pleading stage," (Dkt. 9, at 2), the complete absence of supporting facts for his claims makes them bare, speculative, and conclusory. Hence, these claims fail to meet the plausibility standard and must be dismissed.

The Court leaves undecided whether Boyd's temporary prohibition from coaching constitutes an adverse employment action. Even if it was an adverse employment action, his Complaint, for the same reasons mentioned above, fails to allege any facts which might show that, but-for his race, he would not have been prohibited from coaching during the Summer.

Because his allegations concerning the investigation lack supporting facts, Boyd has not stated a plausible claim upon which relief may be granted, and this theory must be dismissed.

### 2. Conflict-of-Interest Policy

a. <u>Standing</u>

Again, the Court provisionally finds Boyd has established standing in regard to his

MEMORANDUM DECISION AND ORDER - 9

claim as applied to the allegedly selective enforcement of the School District's conflict-of-interest policy *for himself*.[3] For the reasons stated above, the Court will allow Boyd to proceed today but its holding depends on what, if anything, Boyd is able to allege in an amended complaint.

   b. Plausibility

Boyd claims the School District's enforcement of the conflict-of-interest policy against Boyd but waiver of the same policy for its white employees "creates a strong inference of discriminatory intent." Dkt. 1-2. This claim is conclusory and falls short of the plausibility standard.

Even if taken as true that the School District's selective enforcement of the conflict-of-interest policy constitutes an adverse employment action which materially altered the privileges of Boyd's employment, Boyd's Complaint does not plead any "factual content that allows the court to draw the reasonable inference" the School District did so *on the basis* of Boyd's race. *See Twombly*, 550 U.S. at 555. Although Boyd's Complaint asserts the School District has waived this policy for at least some of its white employees, he fails to allege any facts which might show: (1) that the School District would not have enforced this policy but-for Boyd's race, or (2) that the School District waived the policy for its white employees specifically because of their race as opposed to some other factor.

---

[3] Defendants point out that Boyd cannot bring a claim on behalf of his son. This is an accurate statement of the law, but Boyd is not bringing a claim on behalf of his son; he is bringing a claim on behalf of himself. This is, admittedly, a fine line because the allegations of racial bias in not hiring Boyd's son would more appropriately attach to his son, not Boyd. *See Blount v. Morgan Stanley Smith Barney LLC*, 982 F. Supp. 2d 1077, 1083 (N.D. Cal. 2013). That said, Boyd has alleged the discriminatory conduct was the disparity application of the conflict-of-interest policy, not the actual hiring. Again, however, the Court is allowing amendment and Boyd can address this distinction more clearly should he elect to move forward.

MEMORANDUM DECISION AND ORDER - 10

Standing alone, the School District's refusal to waive its conflict-of-interest policy for Boyd despite doing so for at least some white employees is insufficient to plausibly conclude Boyd's race was a motivating factor in the School District's decision.

Hence, Boyd's Complaint has failed to state a plausible claim for relief based upon the selective enforcement allegation.

In sum, Boyd's discrimination claims must be dismissed.

## B. Defamation Claim

At least one Idaho Supreme Court case supports the notion that a Rule 12(b)(6) motion is appropriate where a defendant asks the Court to dismiss a complaint based on a failure to comply with the notice requirements of the Idaho Tort Claims Act (ITCA). *See Dodge v. Bonners Ferry Police Department*, 450 P.3d 298, 304 (Idaho 2019). The ITCA provides that "no claim or action shall be allowed against a governmental entity or its employee unless the claim has been presented and filed within the time limits prescribed by this act." Idaho Code § 6-908. This notice must be filed with the county clerk "within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later." Idaho Code § 6-906. "The failure to file within the ITCA time limitation acts as a bar to any further action." *Cobbley v. City of Challis,* 59 P.3d 959, 962 (Idaho 2002) (citing *McQuillen v. City of Ammon,* 747 P.2d 741, 744 (Idaho 1987)). Even at the motion-to-dismiss stage, a plaintiff bears the burden of proving his compliance with the ITCA's notice requirement. *Dodge*, 450 P.3d at 303.

The School District points out, and Boyd does not deny, that the Complaint fails to allege any facts establishing Boyd complied with the ITCA's notice requirement

MEMORANDUM DECISION AND ORDER - 11

concerning his defamation claim. Because Boyd's Complaint fails to meet this burden, "the plain language of the ITCA requires dismissal of the [defamation claim]." *Dodge*, 450 P.3d at 304.

Because the Court has ordered dismissal of the defamation claim for the above reasons, it will not reach the issue of whether Davis and Derrick are immune from such a claim under Idaho Code § 6-904(3).

## IV. CONCLUSION

The Court has serious concerns about the viability of this case. The Court has, as it must at this stage, construed all *reasonable* inferences in Boyd's favor. It has even granted him provisional standing despite a failure to allege sufficient facts to support his underlying claims. But the connection between the bare allegations of his Complaint and the requested relief is not present. The Court must make unreasonable—or at least unsupported— inferences to save Boyd's claims and this is simply something it cannot do.

That said, the Court cannot say at this stage that Boyd's complaint cannot be saved by amendment. Thus, it will grant him leave to amend *if he so chooses*. Boyd is not required to amend and pursue this suit. However, if he chooses to do so, he must clearly state an injury and how a decision in his favor will redress that injury to establish standing. He must also state facts, not mere suppositions, supporting the notion that Defendants' actions were motivated by discriminatory animus as opposed to some other factor.

///

///

///

MEMORANDUM DECISION AND ORDER - 12

## V. ORDER

**IT IS ORDERED**:

1.  Defendants' Motion to Dismiss (Dkt. 1-4) is **GRANTED.**

2.  The Court GRANTS Boyd leave to amend. Boyd may file an Amended Complaint within 30 days of the date of this order in substantial compliance with the Court's analysis above.

DATED: June 15, 2026

David C. Nye
U.S. District Court Judge